303 So.2d 629 (1974)
V. Jackson KENNEDY, Petitioner,
v.
Mary E. KENNEDY, Respondent.
No. 44826.
Supreme Court of Florida.
November 20, 1974.
Rehearing Denied December 20, 1974.
George A. Routh and Carleton L. Weidemeyer of Wightman, Rowe, Weidemeyer, Jones & Turnbull, Clearwater, for petitioner.
John R. Parkhill, Tampa, for respondent.
McCAIN, Justice.
Once again through application for conflict certiorari we are faced with the task of cutting the Gordian knot arising from irreconcilable differences over a final judgment of divorce with its various judicial dispositions. The case was affirmed by the Second District Court of Appeal, cited at Fla.App., 286 So.2d 286, without opinion. We have jurisdiction pursuant to Art. V, Sec. 3 (b) (3), Florida Constitution, F.S.A. After rehearing with oral argument and upon review of the record, we reverse in part and remand with directions.
Certainly, a trial judge's findings and conclusions come to us shrouded in the mantle of presumptive correctness, however, there is no absolute guarantee against a breach of this breastwork where an abuse of discretion has occurred, as has been partially demonstrated in this cause. Ellard v. Godwin, Fla. 1955, 77 So.2d 617; Carolina Portland Cement Co. v. Baumgartner, 1930, 99 Fla. 987, 128 So. 241.
In acquiring jurisdiction of a case, our Court has appropriate authority to dispose of all contested issues. In the interest of justice and elimination of continuous and protracted future litigation, it appears to be proper and dutiful to exercise the right of permutation in this matter even though it may tend to be hortative to the litigants involved. Nevertheless, the perorations of a judicial tribunal's ultimate conclusion must arrive at some point of finality. Such is this case, and we can only trust that it will be the emendator to the domestic problems of these parties and also an encyclical message to others of equal parity.
The pertinent facts reveal that the wife (respondent) was initially twice married *630 and divorced. She later married the petitioner-husband. Unfortunately this third marriage also resulted in a divorce, with the wife receiving approximately one-half of petitioner's assets.
The parties subsequently re-married. Intranquilities again occurred, resulting in the wife filing suit for this divorce in April, 1972, in which she also sought additional and further relief.
After final hearing and in open court, the trial judge announced his ultimate findings and conclusions. Thereafter, a written amended final judgment was entered on April 19, 1973, which, in essence, resulted in:
(1) A dissolution of marriage;
(2) Child custody and support for the children being awarded to the wife with reasonable and liberal visitation for the petitioner;
(3) An attorney's fee award of $1,500.00 to the wife;
(4) An award to the wife of the house jointly owned by the parties as lump sum alimony, plus $10,000.00 cash;
(5) An additional award to the wife of $500.00 per month for her support, maintenance of a home for herself and the children during their minority, with the additional proviso that "the alimony will terminate thereafter"; and
(6) Directing petitioner to maintain life insurance during the childrens' minority to guarantee these payments.
Items (1) and (2), above, are not in dispute and therefore do not require our attention. We cannot find fault with item (3), relative to attorney's fee, and therefore this is also affirmed.
However, items (4), (5) and (6) are the onerous problems, in this case, which result in vexatious consideration and ultimately lead to a departure from reasonable judicial discretion.
In attempting to plug the facts of this case into the socket of judicial logic and impartial results, we need turn only to the cold steel facts of the case and the established law of our State.
As an example of apparent but obviously reasonable perplexity, the trial judge's open court comments stated, among other things:
"... Mrs. Kennedy is worth less than a quarter of a million, and Mr. Kennedy is worth a great deal more than that. Mrs. Kennedy is obviously qualified to earn a very substantial living of her own, in property dealings and wheeling and dealing, as well as apparently an exceptionally qualified teacher...."
The wife was earning in excess of $20,000.00 per year. While petitioner was normally earning in excess of that sum, and upon occasion earned income well in excess thereof, these extra profits of the husband were primarily derived through federal income tax shelter benefits which in normal sequence were credited to his benefit. The various properties, bonds, stocks, interest and income of the wife, together with her professional training and ability, more than amply qualified her for the characterization as a "wheeler-dealer", as the trial judge found. Thus, under the fundamental law of this State, she is not entitled to alimony or maintenance of any nature. The wife apparently asserted a special equity claim on the home; however, the trial judge declined this thrust. In fact, that which has already been paid by the petitioner ($500.00 per month) under the 1973 judgment should more than fill her needs for "rehabilitative purposes", as hereinafter discussed. Sub judice, indeed this case involved a pyramiding of alimony.
In Roberts v. Roberts, Fla.App. 1973, 283 So.2d 396, 397, Judge Sam Spector, speaking for the majority, succinctly stated:
"In absence of evidence that the appellee cannot fulfill her own needs, there does not appear any basis for an award of *631 alimony at this time under the new `no fault-no responsibility' divorce law recently enacted by the state legislature.
"The public policy under the new law which the legislature passed and which therefore we must apply seems to be that if the spouse has the capacity to make her own way through the remainder of her life unassisted by the former husband, then the courts cannot require him to pay alimony other than for rehabilitative purposes.
"While this new public policy does not conform to the `old fashioned' thinking that once prevailed in Florida, the only remedy available to those affronted by it is to seek from our `new fashioned' legislature."
Then, in Steinhauer v. Steinhauer, Fla. App. 1971, 252 So.2d 825, 830, 831, the Fourth District Court of Appeal held:
"... As Justice Adkins observed, `The unity concept of marriage has given way to the partner concept whereby a married woman stands as an equal to her husband in the eyes of the law.' Gates v. Foley, Fla. 1971, 247 So.2d 40. In Gates, the Supreme Court of Florida determined that based upon recent changes in the legal and societal status of women in our society the wife would now be permitted to recover for the loss of her husband's companionship, affection, and sexual relationship (consortium).
"As observed earlier, by operation of law each party is entitled to one-half interest in property held by the entireties, i.e., the marital dwelling, joint bank account, etc. This division is consistent with the partnership concept and gives true meaning to the equality of the status of women. As our Constitution states, `There shall be no distinction between married women and married men in the holding, control, disposition, or encumbering of their property, real or personal.' Art. X, Sec. 5, Const. of Fla., F.S.A. In direct contrast to the foregoing is the general proposition that a transfer of property from a husband to a wife (as joint tenants) is presumed to be a gift; whereas, a transfer from a wife to a husband (as joint tenants) of her separate property is not presumed to be a gift, the burden being on the husband to establish that fact. Olsen v. Olsen, Fla.App. 1967, 195 So.2d 864. This presumption is seemingly premised upon the inequality of the marital partners and the subservient status of the wife. We cannot accept the concept that a wife is anything less than an equal partner with the husband in the marital relationship. Our own Constitution and statutes place the woman on a status equal (not inferior) to the man."
Next, in McRee v. McRee, Fla.App. 1972, 267 So.2d 21, 22, the Fourth District Court of Appeal stated:
"... The criteria for alimony are the need of the wife and the husband's ability to pay. Calligarich v. Calligarich, Fla.App. 1971, 256 So.2d 60. Obviously this formula does not necessarily compel an award which maintains the pre-divorce standard of living for the wife. The wife's age and potential for employment are relevant factors which may be considered in assessing her need for alimony. McGarry v. McGarry, Fla.App. 1971, 247 So.2d 13. Lump sum alimony may be awarded to the wife instead of permanent periodic alimony where a lump sum award is justified for rehabilitative purposes. Calligarich v. Calligarich, supra. A lump sum award may be used, in other words, to tide the wife over until she can convert an earning potential into actual earnings."
See also Thigpen v. Thigpen, Fla.App. 1973, 277 So.2d 583 and Owen v. Owen, 284 So.2d 384 (Fla. 1973).
Upon final analysis in this case and upon the facts contained in this record, the wife, in consideration of the reasonable equality of the parties and upon the reasonable assumption of an equal partnership, is not entitled to alimony or maintenance, *632 other than that which has been paid. We understand the $10,000.00 lump sum award has been held in abeyance and, therefore, is subject to non-payment under this opinion. The $500.00 monthly payments heretofore paid are confirmed as rehabilitive restoration. The title to the marital home should be resolved into a one-half interest of ownership to each party, with each being responsible for his and her proportionate share of mortgage, tax and/or lien payment, with the wife retaining the right to live in the home until their minor child reaches majority. Ergo, no necessity exists for the continuance of the life insurance guarantee.
In complete and full recognition of one's deep-rooted feelings for humanity and kindness, nevertheless, it has been so aptly stated that as the irreconcilable wicked man should not pass automatically from misfortune to prosperity, neither should a good man suffer a shocking change from prosperity to misfortune.
This is not to imply that our Court does not and has not recognized the extreme necessities for substantial awards of alimony (lump sum or periodic) as well as other support and property divisions to be afforded a divorced wife, however, this case simply does not qualify.
Thus in effect items (1), (2) and (3) above are affirmed and the remaining items, i.e., (4), (5) and (6) are reversed in accordance with the foregoing rationale.
Therefore, the decision of the Second District Court of Appeal is quashed and this cause is remanded to that court for further remand to the trial judge for entry of a judgment in keeping with the views expressed herein.
Affirmed in part and reversed in part.
It is so ordered.
ADKINS, C.J., and BOYD and DEKLE, JJ., concur.
OVERTON, J., dissents.